Good morning to the members of the court. My pleasure to be here. My name is Robert Vaughn, and I am counsel for the appellant at this level, which is Alexandria Consulting Group. There's a lot of names that are somewhat similar, and I'll probably generally refer to Alexandria Consulting Group as ACG. And distinguish the other two Alexandria's that are part of this fray is the appellee, which is Alexandria Surveys LLC, and the debtor, which is one word difference, Alexandria Surveys International LLC, which I may refer to as ASI. That's the way they were referred to down below, and I'll try my best to make sure I distinguish between those when I'm speaking. Essentially, the ACG's position is the bankruptcy court got it right and the district court got it wrong. The district court was wrong, I believe, on both its interpretation of the facts, its interpretation of the procedure of the case, and ultimately its interpretation of what the law requires. And those facts are fairly important for this court to ultimately make its determination of where it comes out. It may not necessarily be determinative, but certainly are instrumental to seeing where we ended up. At what point do we measure whether a party or an entity is a party in interest for purposes of reopening bankruptcy? Is it a person or entity that was a party in interest during the bankruptcy, or someone who asserts that for the first time post-bankruptcy? I think the determination has to be made at the time the motion to reopen is being considered. Well, would that allow people to lay aside in bankruptcy, not file proof of claims, and then stretch the bankruptcy proceeding on for years? I believe if I'm following your question correctly, that would be the implication that unless there was a requirement to raise that issue at the motion to reopen... Right, I'm saying if you look at a party in interest to decide if they have the authority to move to reopen a completed bankruptcy, doesn't that cut against the finality of bankruptcy? It seems to me perhaps you measure a party in interest, whether or not that party was a party in interest at the time the bankruptcy case was proceeding. The very last part of the question, at the time? If you measure a party in interest at the time they filed, which could be 15 years later or some odd number, doesn't that cut against finality of bankruptcy by deciding party in interest status at the time the motion is filed post-bankruptcy? No, sir, because I don't think those two change over time. What limitations are there? I mean, bankruptcy case would never be closed. I mean, you can have it one year afterwards, two years afterwards, five years afterwards. The party either has an interest at the time the motion to reopen is filed or they do not. And the question is, how do we decide when a party does or does not have that interest? Well, I think you first have to decide what is the definition of a party in interest. That's why we're asking your view. And I certainly, what I cited in the brief... What is your relationship to the debtor in this instance? None whatsoever. Pardon? With the exception of being a creditor of the debtor. If you're talking about relationship in terms of whether we're a competitor or something, which is an issue that was raised repeatedly below and is not supported by the evidence. You claim, your client claims to represent, to be the agent for SC Alpha Engineering. Is that correct? We are the successor to AC Alpha. Did SC Alpha Engineering file a proof of claim during the bankruptcy proceedings? We never received notice of the bankruptcy filing is why there was never... So the answer was to my question, did you file a proof of claim in the bankruptcy? No, sir. And I want to go back again. SC Alpha was a creditor of the debtor. There's no question about that. There's no question that you're a creditor. No question that we're a creditor.  When were you a creditor? At the date and time that ASI filed its initial Chapter 11 petition, we were a creditor. But you filed no proof of claim during that proceeding. We never got notice that there was a filing. And the case proceeded and was ultimately closed before SC Alpha and ultimately ACG had any knowledge of it. And that's part of the problem with this particular case, because the owners of AS, Allegander Surveys, and ASI are one in the same. And they orchestrated a series of events that enabled them to effectively keep the assets of ASI, continue on business, in business as a same entity, in effect, just by dropping one word. The district court says it's undisputed that ACG was not a creditor of the debtor. I agree. That was in the opinion. And I cannot tell you where the... But yet, he says it's undisputed that ACG was not a creditor of the debtor. And you are saying that that's wrong? It never was an issue in the district court. It never... They're asking, is it wrong? It is wrong. Absolutely. It's wrong. Was it disputed? It never arose. That is the point, Your Honor. Well, but isn't it your burden if you're trying... You're the one that's reopening. So if you file a motion to reopen, the person that files a motion to reopen has the burden of establishing an interest that would lead to the reopening. And so it would be up... You say it never arose. It never was in company. It would be up to you to establish the strongest possible interest that you could as a creditor of the debtor. I believe that ultimately how the process occurs is part of the confusion that even arose with Judge Grady. The basic parameters of what transpires is you file a motion to reopen. And then notice is given to all parties who may have an interest. And I use that as a small I, which in this case specifically included Alexandria Surveys. And then anyone can come to the court at that point in time, as Alexandria Surveys actually did in the person of Sharon Hoofnagle, and argue to the court whether in fact there is a basis to reopen. You were saying that Alexandria Consulting Group was a creditor? Yes, sir. I thought that SC Alpha Engineering was a creditor. SC Alpha Engineering was an entity owned by Christian Ortan. I didn't ask you all that. I said I thought the point was that in this scenario, SC Alpha Engineering claims to be a creditor. It does. And SC Alpha was the successor to Alexandria Consulting Group. Mr. Ortan formed ACG with other partners and transferred his interest from SC Alpha to ACG. It's a continuation of the same business with new people. So Ortan is both presenting as the agent of SC Alpha? He was a member of SC Alpha. So SC Alpha is out of the case. SC Alpha doesn't exist as an independent entity anymore when ACG... But ACG asserts the creditor status that they did not have independently, but which they somehow inherited from SC Alpha. They did not exist at the time of the original filing. The answer would be yes? Yes, sir. Sure. It seems to me, how did you, when you moved to reopen, how did you establish the fact that you were a party of interest? And it seems the gateway you've chosen to do that is by establishing yourself as a creditor. And the motion to reopen, how did you purport to do that? And why did the district court say it's undisputed that ACG was not a creditor? The answer to the latter question is I can't answer that beyond the fact that the district court simply got it wrong, which is one of the first things. But did you provide a chance? Did you provide an argument? He says it's undisputed, which means when I read that language in the district court opinion, it means, well, which party had an obligation to bring it into dispute. The fact that something is undisputed doesn't mean it could not be disputed. It means that it's undisputed at the time the thing was before Judge Grady, because one party or another hasn't brought it into dispute. Again, I'm not trying to avoid the question. I can only answer it by we raised the issue in our briefs in the district court, and I certainly raised it as part of the argument. And Judge O'Grady, in his ultimate opinion, made that statement. It wasn't part of the record. When did you become a creditor? From the word go, S.C. Alford was a creditor. ACG is the successor to S.C. Alford. When does ACG, as an entity, become a creditor of the debtor? As soon as it acquired the interest of S.C. Alford. And that was outside of the bankruptcy? That had nothing to do with the bankruptcy. S.C. Alford was never- I didn't ask you if it had anything to do with the bankruptcy. I said, was it outside of the bankruptcy? Yes, sir. So after the bankruptcy case had been finalized, you became a creditor by way of- No, sir. The bankruptcy case was pending when ACG was created and took over S.C. Alford's business. But you didn't assert their interest because you didn't know the bankruptcy was ongoing? We did not have any knowledge of the bankruptcy proceedings until after it was closed. ASI purposely chose, and I believe the record demonstrates that, not to give notice to S.C. Alford that it had filed. Which is, again, I'm going back to why the concern in this case is there's been some- Did ACG know that the bankruptcy case had been filed? Not until after it was closed, and that's when they came to me in the latter part of 2012. I've got to get the year right. Is your position that ACG would have no interest absent acquiring the S.C. Alford status? No, I won't concede that point either because- Then how would they have been affording- Because I believe we have to go a two-step. Number one, at the motion to reopen, anyone who wanted to contest the standing of a party had absolute right to do so. And AS, Alexander Surveys, could have contested- But the fact is, the fact that they didn't contest it means that you had it. Maybe they just didn't do it for whatever reason. I'm asking you. Do you claim any interest in the bankrupt estate before acquiring- Do you claim that you, ACG, was a creditor of the debtor before you acquired the interest of S.C. Alford Engineering? I believe it's a little bit of a question that I can't give you a yes or no. They are one in the same. As ACG succeeded S.C. Alford, it was just a transfer of ownership- Did that happen during bankruptcy or after bankruptcy? That happened during the Chapter 11 proceedings of ASI, but we did not know about those proceedings. The problem, and the judge touched upon this earlier, the question that I'm concerned about is the finality of bankruptcy proceedings. And our case law- I forget what the name of the case is- but the case law has been pretty clear in saying a party must have a direct interest, not an indirect interest. And what can happen is that you can confuse the term party in interest, which is a term of art, and has been a fairly precise term of art, with a term, a loose term, such as a party which takes an interest in something. And there are a lot of parties that may take an interest in what happened in a bankruptcy proceeding, but they still wouldn't be parties in interest. And standing is a pretty important doctrine in the federal courts. And I worry here, if we loosen it up without a strong showing on the part of someone who is a movement to reopen, that we're going to leave the bankruptcy courts open to motions long after the fact. I think we have that situation because of what happened here, not because of what the court is saying. What we have here is AS waited, laid in wait, if that's the right phraseology, at the time the motion to reopen was filed. They had their representative there. They could have raised the issue if they did not believe that ACG had standing. They could have raised it at that point in time, and the bankruptcy court would have conducted a hearing, would have had evidence. And you're coming in after the point of discharge, and you're coming in as a successor creditor, and no proof of claim was filed during the bankruptcy proceeding on, at least by your client. And I don't even know whether it was filed by the predecessor. And you're saying, well, as a successor, we weren't given notice? I didn't say that at all. I said SC Alpha, who was an active creditor at the time of filing, was not listed as a creditor by ASI, and therefore it did not receive notice of the bankruptcy. All of this was in the motion to reopen. Yes, sir. And I recited in the motion to reopen that AS was a successor to ASI. You told me ACG had no notice. That's what you answered to me. You said ACG. I asked you specifically. I said, did ACG have notice, and you said no. The answer is that they did not have notice either. But at the time of the filing, the credit was held or the debt was held in the name of SC Alpha, and it was clearly a creditor, and the ASI chose not to notice them as a creditor, and therefore they received no notice that the bankruptcy case had been filed. You know, one of the things about finality in bankruptcy is that, you know, you have the estate distributed in various shares and everything to creditors, and people accumulate reliance interests after the bankruptcy proceeding is closed and the debtor is discharged, and they have to rely upon those distributions. And let's say the assets of the estate were exhausted, and there's a real danger in sort of upsetting transfers that all the other creditors who were part of the bankruptcy proceeding have received and presumably have relied upon in their own financial plans. And then we have somebody come lately and want to revisit the whole thing. That's not what happens with a motion to reopen with all due respect, and it's not what happened in this particular case. There were no creditors who objected to the reopening. The only entity that objected to the reopening was ASI itself, and the reason ASI objected to the reopening of the case is because it had transferred its assets while the rule that we established can be used in other cases where there are multiple creditors. Well, I think the established rule clearly is that you can't raise an issue for the first time on appeal, and AS, who did receive notice of the motion to reopen, who personally did appear at the motion to reopen, never sniffed or suggested that there was not standing, and they waited through the entire process in the bankruptcy court through two days of hearings in the bankruptcy court. It's almost jurisdictional. Well, it's not. It is an issue that. Standing was the concept of jurisdictional. It is clearly an issue that is waivable, and no one has suggested that it's other than that. Even ASI or AS doesn't contend that it was a jurisdictional issue. They simply contend we can raise it now because we didn't have an opportunity at the motion to reopen, which is not true. May I say one more thing in response? You have some rebuttal time, sir. Okay, thank you. Mr. Hall. Thank you, Your Honor. Please support Richard Hall, counsel for the affilee. I'd like to start. You need to start by talking to the microphone. Thank you, Your Honor. Better? It is. There you go. Thank you. That's great. Thank you, Your Honor. I'd like to start by addressing the court's concern about the identity of ACG and SC Alpha. Contrary to what counsel just said, nowhere will anyone find anything in the record about a SC Alpha or ACG being a creditor until a motion was filed in the district court to reconsider Judge O'Grady's opinion. That is the first time there is any mention in the record of any intimation that ACG is making a claim to the status of being a creditor. In fact, in the motion to reconsider filed in the district court after Judge O'Grady's opinion, ACG says that Christopher Ortan is an agent of SC Alpha, which is a Romanian company. You're telling me now that the whole notion of ACG as a creditor was not raised before Judge O'Grady until a motion for reconsideration? That is correct, Your Honor. And that's why Judge O'Grady said it was uncontested. It does not appear in the motion to reopen, as counsel just said. So that's why he used the words it was undisputed. That's correct. Page seven. Sorry. No, go ahead. Thank you. Page 76 of the joint appendix. And when I use these page numbers in the joint appendix, I'm using the number that the appellant put at the bottom of the page. There's a discrepancy between the numbers in the court system and the numbers on the actual document. Page 76 is the motion to reopen. And nowhere will you find in the motion to reopen any statement or, again, any intimation that ACG is a creditor. Nowhere in the motion to reopen? That is correct, Your Honor. It's not there. Do you know when ACG or were you aware that ACG had acquired or was the successor to SC Alpha? Not until the motion to reconsider was filed to Judge O'Grady's opinion. We laid this out in our brief, Your Honor. One of the things I say is a curious evolution of the identity of the appellant. Only after Judge O'Grady found there was no standing to reopen did we begin to hear that Christopher Ortan had some relationship with SC Alpha. When the case came to this court and there was a motion to stay the ruling of Judge O'Grady, we heard that Christopher Ortan was acting as the agent for SC Alpha based on an unsigned affidavit. Judge O'Grady characterized ACG as a competitor, essentially. We did, too, Your Honor. Yeah, and he says this is ACG. It's undisputed that ACG was not a creditor of the debtor. It's another firm engaged in residential surveying in northern Virginia. So he's looking at the case and saying, if I give standing here, I'm establishing a doctrine of competitor standing for purposes of reopening. And that's going to play havoc with the purposes of finality and bankruptcy because I don't know where that ends. There could be all kinds of competitors of the bankrupt who, after the fact, would come in and move to reopen, despite the fact that they're not within. I know all these different definitions of parties in interest in Chapter 11. None of them mention competitors. And Judge O'Grady is finding that this is a competitor. And I think you just throw open the gates. You do, and I would endorse Your Honor's argument there. Not only do you throw open the gates to competitors, but bankruptcy is a very powerful tool. You have 2004 hearings, depositions that can be literally fishing expeditions under Rule 2004. And the court defined who a party is interested in the Yadkin Valley case, which we cite in our brief. Your Honor, the Fourth Circuit did, this court. Determined when? In the Yadkin Valley bank case, this court found that a party in interest for the purpose of reopening was one that had a direct pecuniary interest in the bankruptcy. As a judge, when? Oh, Judge, when? As a judge, when? When is their status a judge? I don't think that they, I don't recall that they discussed that. You understand the point of that, don't you? Yes, I do. Because either you have to assess at the time they filed a motion to reopen, or you have to assess their status at the time the bankruptcy was ongoing. Absolutely true. And think of the chaos. Which do you say? Pardon me? Which do you say? Oh, it has to be when the bankruptcy is first pending. Because otherwise, as I was saying, bankruptcy is a very powerful tool. Reporters, parties in a divorce case could come in and seek to reopen a bankruptcy to take advantage of the many tools that bankruptcy offers parties in interest. 2004 hearings, other such things, for instance. Well, I'm just worried about unsettling the whole thing. Oh, indeed. You know, I mean, you've got a very carefully established set of priorities. You've got a very, the trustee is overseeing a very carefully administered set of distributions. Everybody goes forth in reliance on that. And then you have somebody, you know, down the road who went, became whatever they became well after the fact. And they seek to reopen that whole thing again. And you wonder, well, when does this ever get, when does this ever get resolved? Because commercial activity depends upon a degree of certainty in planning and other things. And some things have to be resolved. Well, you know, I mean, I'm not going to go on and say, oh, well, this is only one creditor. But, you know, that's not going to be the only time it's raised. And with respect to our Yadkin Valley Bank versus McGee case, would we, you're familiar with that case. I am, Your Honor. We said it in our brief. Yeah. Would we have to overturn that case to adopt an appellant's position? I believe so. I believe so. And it would be improvident to do so. Your Honor, as Your Honor suggests, it would be bankruptcy litigation world without end if parties who are successors in interest could come back years later and reopen the case, as in the Nintendo case, which we cite in our brief, a Tenth Circuit case, which cited Yadkin Valley. What if the debt is undisputed for someone filing? You talked about parade of horribles with the press and blah. Forget all that. What if somebody had a debt? They were a creditor. No dispute. No dispute. They were a creditor. Would they be a party in interest post-completion of bankruptcy? Yes, sir. Well, okay, then you can open it later because that's what the claim is here. But it never arose until – and that suspect you'll never find in the record. Any suggestion? I'm just asking. That seems to be their – as I understood their case is they're a party in interest because one of their principals is the agent for the Romanian company. I thought that's their argument. That seems to be their argument, Your Honor. But if you would – I'm just saying if you would acknowledge there was a debt, why wouldn't that allow them to file as a party in interest? Well, Your Honor, we don't acknowledge it. We don't know much about it. In fact, once a debt is transferred – And then I ask why in that circumstance wouldn't a creditor have filed a proof of claim because I looked to see if there was one, and I couldn't find one. But they say in response that they – notice wasn't given. SCAlpha was a creditor. It was listed in an amendment to the petition. But that isn't what they're saying. They're saying the claim was transferred from SCAlpha to ACG. And if a transfer is made, there's a requirement under bankruptcy rule 3001E1 to note a transfer in the record. You file that document. Of course, you see it all the time, credit card companies, mortgage companies, and so forth. None of that was done. But the point I'm trying to get to the nub of is, was SCAlpha – but by the way, ACG's claim is derivative of SCAlpha, is it not? No, we don't – Isn't that their argument? It's either as an agent or successor in interest. That is their argument first raised in the motion to reconsider. Okay, but that's their argument. Yes, it is, Your Honor. And so I'm trying to decide to determine and understand the status of SCAlpha at bankruptcy. Was SCAlpha on the notice and listed at bankruptcy? Yes. So SCAlpha would have gotten notice? Yes, Your Honor. I presume the court would act appropriately and provide SCAlpha notice. But the employees of ACG and SCAlpha had actual notice of the bankruptcy because they were former employees for the most part of the debtor. So in other words, you say then, as I understand it, that the claim as a creditor, which now is being proffered at some point in this litigation, was a claim which could have been filed by way – asserted by way of proof of claim filing at the bankruptcy, during the pendency of the bankruptcy. That's correct. As well as SCAlpha could have come in and filed a motion to sell assets or have to compel the trust before the case was closed. But my point is they were given on a normal course of events. They would have been given notice and they could have acted any number of ways during the pendency. But now that credit interest, creditor interest, creditor status is now after the date is being asserted in some capacity after the date of the completion of bankruptcy. It would appear so. You say it appears so. You've been in this case from the get-go, I guess, and if it just appears so to you, imagine how it looks to me. Well, I say it appears so because I never knew of it until after Judge O'Grady's ruling. Because the first time we hear any – So you knew of the creditor status. You said it's on the filing. Yes, Your Honor. When we looked – How about that? It's either straightforward or not. Did the debtor know of SCAlpha's interest as a creditor during the bankruptcy? Honestly, yes, I believe they did. I was not debtor's counselor, Your Honor. And it made a difference. You represent that they did, I think. That's correct. And I believe that's correct. One of the points you were raising, and I'm interested in this, you are – I want to make sure I understand you. You're saying that the status that ACG was trying to establish as a creditor was not mentioned in the motion to reopen? It is not. All right. And then you're saying it was raised for the first time in the motion to reconsider? That is correct. The ruling below? That is correct. Okay. And now, I suggested to opposing counsel that there was some obligation to raise once – if you're moving to reopen, which is an extraordinary motion, that you have some obligation to establish by what right, i.e. standing, you possess to reopen. That is correct. I mean, it's a question – so much of things – it is a question of who bears the burden. And what you're saying is that the reason Judge O'Grady said that it was undisputed was because it was – why? He, like I, had never heard of that argument prior to his decision. Your Honor, are there any other – there are other elements to the case, obviously, that we could discuss. Do you have any further comments to make? Well, yes, Your Honor. I would talk about the issue of whether a telephone number is property of the estate. What about that? Just give us that in a nutshell. Certainly, Your Honor. This is the alternate ground you raised? Pardon me? This is the alternate ground. Yes, that's correct, Your Honor. We don't need to get into that, though, with the standing. That's correct, Your Honor. But I just asked for a minute or two sentences on it. And I can't do it in two sentences. Well, try. Unless I'm – Well, try. James Joyce can write 50 pages in a sentence. You ought to use one sentence. Try. Thank you. Your Honor, the Communications Act – Let me ask you this. It's a question of state law, isn't it? It is a question of state law. What is the state law on that web address and telephone in the state of Virginia? Defined by Network Solutions v. Umbro, Your Honor. And is? Which says that they are not property of the subscriber, but are incidents of a service agreement between – Two sentences. I thank you very much. Thank you, Your Honor. It's a contract right, right? That's correct, Your Honor. It's an executory contract. It's not a property right, and it's not property of the estate. It is not. The executory contract can be assumed by the trustee within certain time limitations, and it wasn't in this case. What is that contract over? Is it the domain name, or is it the address? What is exactly the – What – Is at issue here? I got the phone number, but what about the web address or website? What is at issue here? Well, those were both addressed by Network – I know, but I'm asking you, what's at issue here? Is it the www dot, or is it the face page of the website? What is at issue? It's the www dot, Your Honor. Can't you buy those? Well, you can – Buy those? Well, I think you can, but they don't belong to you necessarily. What you're buying is the right under the contract. You go to GoDaddy or somebody like that and get – buy that domain name. It's not yours? No, you have a contract with GoDaddy. At least you say Virginia doesn't say it's yours. And if I don't pay GoDaddy, I won't have that name any longer. That's my argument, my rebuttal, Your Honor. Okay. Thank you, Your Honor. Do you have any other questions? I have a few minutes left. Thank you, Your Honor. You don't have to take – squeeze out every last second. Mr. Vaughan. Yes, sir. Let me first point out something I think is extremely material for the court's determination. If you refer to the creditor's matrix, it appears on pages 13 through 15 of the appendix, which is the creditor's matrix that is filed by ASI at the time they filed their bankruptcy proceeding. And it's the basis on which it's essentially the mailing labels utilized by the bankruptcy court to send out notice that a bankruptcy has been filed. You will note that SCAlpha does not appear on that list. The debtor prepares the creditor's matrix. They left SCAlpha off the list, and I suggest the evidence is that they did so intentionally so that SCAlpha did not receive notice of the filing of the bankruptcy proceeding. I also have to go back and make it clear what the process was. The reason the issue of standing never arose until after – I should say, the issue of whether or not ACG was a creditor never arose until after Judge Grady's decision is because, one, in the bankruptcy case court, the matter was decided on a motion for judgment at the close of AS's evidence. It never contended in that evidence that ACG did not have standing. It never was an issue in the bankruptcy court. It was never addressed. So there is no record that went up to the district court at which that was addressed. The issue that was addressed at the district court was whether or not ACG – I should say, AS – could raise that issue for the first time on appeal. That was the issue that was before the bankruptcy court. But you were the one that filed the motion to reopen. Yes, sir. And you are aware that only a party in interest can reopen a bankruptcy. And we believed we were. It was never contested that we weren't. And the bankruptcy court conducted a hearing. It heard evidence. It heard argument. And the bankruptcy court made the determination that we had the right to request the reopen. And it did, in fact, enter an order reopening the case. That would have been the point in time to challenge ACG's standing if it were contested. But AS, who was there at that hearing, made a determination for whatever reason not to contest that. And I want to emphasize one more thing. AS is no more a creditor or a party in interest, using their definition, than ACG is. So at what point do they have the right to contest our standing? It's a circular argument. They can't say we are not a party in interest and, therefore, we couldn't raise it at the motion to reopen stage. But we have the right to raise it on appeal. That is the duplicitous position, if I ever heard one. And that is exactly what AS has done in this particular case. So the issue is, at the bankruptcy stage, did the bankruptcy court have the power and the right to reopen the case? It heard the evidence. It heard the arguments. And it made that determination. The case then proceeded to deal with two assets of consequence that AS had taken without right. And that's a part that I hope doesn't get lost in the shuffle. Because AS and ASI were controlled by the same husband and wife, all they did, while ASI was actively operating, and in business, and in Chapter 11, in violation of the automatic stay, without notice to the court, or any... What is the state law on property rights as to the web address and as to the phone number? It is, and I quote from Umbro, a form of intangible personal property. That appears on page 9 of the printed decision. I can get you the... How old is it? How old is that decision? This is Umbro's decision in 2000. And it clearly held that a domain name was a property interest, an intangible property interest. The only issue that was raised in Umbro was whether or not the specific statute in Virginia on garnishments allowed a garnishment of a domain name. And the holding in Umbro is ultimately very narrow. It says very specifically that the only thing that's being ruled here is that because it is a property interest and not a debt, you can't garnish a property interest, you can garnish a debt. But I can't understand why you are a successor in interest. He's saying that ACG has notice. You're a successor in interest. You're the one that's trying to reopen the case. And you say, oh, we have no obligation whatsoever with respect to standing. And the like. But if I were coming in as a successor in interest, well after the closure of the case and after the discharge, I think I would make an effort, a real effort to say why I had a right to come in. Whether it's before the district court or the bankruptcy court or whatever. I think I would say here's why we fit in the bankruptcy process. We know that motions to reopen are disfavored. And especially when you're coming in as a successor in interest. It was it was never challenged that we weren't. That's the point. Why would I? But I know you're saying, well, it's never challenged. I bear no responsibility. No, I don't say that at all. I'm not saying that at all. If you're coming in well after the fact and you're a successor in interest. I would think it would behoove you to establish a strong footing. Well, why are you asking the courts to take what is a disfavored and frankly, somewhat extraordinary action? I would suggest that we apparently did just that because the bankruptcy ruled that, in fact, we did have standing. And it opened the case. It couldn't have done so otherwise. And that, again, gets lost in the shuffle. The bankruptcy court made this determination. If someone contended we didn't have standing, it was their burden to challenge in it. It was the bankruptcy concluded court concluded that we did. And to allow it to be erased for the first time on appeal where we've never even had the opportunity to put on our evidence of standing. And he characterized you all as a competitor. That's not true either. You can read their own record. That simply is not true. Write a falsified opinion. Judge O'Grady got the facts wrong. And I recited in my brief very clearly where he got the facts wrong just from the simple timeline. He found that the you not we're not a competitor. No, sir. A.C.G. is an engineering company. They do engineering. They don't do house location surveys. They are not a competitor. And if you read the transcript and I recited the points in my reply brief, you'll find that there is no testimony that A.C.G. was a competitor. The closest that came was Mr. Hoofnagle's testimony was that. I think you understand, though, about our concern about having these bankruptcy proceedings reopened and the and the dangers of unraveling finality. May I respond to that? And I'll promise I won't say any more. Quick response to that instance is we've given you additional time. I appreciate that. The short answer to that question is by allowing A.S. to raise that issue for the first time on appeal is what's creating a flux in the bankruptcy proceedings. It's creating havoc out there because these issues are to be decided when the motion to reopen is initially argued. Not wait a year and a half down the line and raise that issue. Thank you very much.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Stephanie D. Thacker